**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2806-16T2

ANTHONY BELL,

     Plaintiff-Appellant,

v.

GLADYS BELL,

     Defendant-Respondent.

_____

Argued September 12, 2018 – Decided January 18, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0286-00.

William Rodriguez argued the cause for appellant (Rodriguez Kim Law Group, LLC, attorney; Georgeann M. Belcher, Kiera E. Kenniff, and Thomas Kim, on the briefs).

Kevin C. Orr argued the cause for respondent.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff (ex-husband) appeals from the December 13, 2016 Family Part order denying reconsideration of a September 16, 2016 order. The December 13, 2016 order denied reconsideration of the effective date of emancipation of the parties' youngest child; denied reconsideration of the enforcement of the provision of the parties' property settlement agreement (PSA) entitling defendant (ex-wife) to a lump sum payment of $30,000 from plaintiff's pension plan; and denied reconsideration of the counsel fees awarded to defendant in connection with the enforcement of the pension provision. The December 13, 2016 order also awarded defendant additional counsel fees for opposing plaintiff's reconsideration motion and for her cross-motion to enforce the September 16, 2016 order. For the reasons that follow, we reverse and remand for a plenary hearing.

The parties married in 1981 and divorced in 2000. At the time, they had three unemancipated children born of the marriage: L.B.,[1] a girl born April 1981; A.B., a boy born October 1984; and S.B., another girl born December 1985. Under the parties' PSA, which was incorporated into their March 28, 2000 Dual Judgment of Divorce, plaintiff was required to pay defendant child support in the amount of "$327[] per week . . . which include[d] [fifty dollars] toward . . .

---

[1] We refer to the children by initials to protect their privacy.

A-2806-16T2

[c]ollege tuition." Plaintiff also agreed to "liquidate his Copeland and IRA accounts to pay for [L.B.'s] [c]ollege tuition through May 2000[,]" and agreed to pay defendant "$375[] at the rate [of] [fifty dollars] per month commencing April 2000 toward an outstanding legal bill for [A.B.]"

Under the PSA, both parties waived alimony. However, while plaintiff waived "any and all claims" against defendant's pension, the pension provision of the PSA specified that "[defendant] shall receive $30,000[] of [plaintiff's] pension to effectuate a 50/50 division of both parties['] pensions." Further, the parties agreed to attempt to "settle" any "dispute arising under [the PSA]" between them before resorting to "the [c]ourts for any determination[,]" and agreed to "keep the other informed of his or her place of residence and telephone number" and "promptly notify the other of any change." Additionally, the parties represented that they had "independent counsel[,]" that they entered into the PSA "without any coercion, duress[,] or undue influence," and that they "read and understood all of the provisions of [the PSA] and deem[ed them] fair and reasonable[.]"

Thereafter, the parties engaged in extensive post-judgment motion practice, primarily involving the children. Specifically, an August 18, 2000 order directed plaintiff to comply with the provisions of the PSA, requiring him

to liquidate his accounts to pay L.B.'s college tuition and make monthly payments towards A.B.'s legal bill. A December 1, 2000 order issued a warrant for plaintiff's arrest for non-compliance with the August 18, 2000 order. After plaintiff surrendered himself, a January 5, 2001 order credited his $500 payment to his arrears, which included a $10,760 outstanding balance for L.B.'s college tuition. When L.B. did not return to college after the Spring 2000 semester, on plaintiff's motion, a June 14, 2004 order emancipated L.B., retroactive to April 1, 2002. The order also reduced plaintiff's weekly child support obligation for the two younger children to $227 "until May 1, 2007," or until a "credit of [$7638]" negotiated by the parties in connection with L.B.'s emancipation was liquidated, at which point the child support obligation would increase to $282 per week. Additionally, the June 14, 2004 order directed the arrears of $5500, "represent[ing] [L.B.'s] past due college tuition" to be paid to Fairleigh Dickinson University (FDU), at a rate of $115.48 per week until "paid in full."[2] Thereafter, in 2005, the trial court granted plaintiff's motion to emancipate A.B.[3]

---

[2] In a June 10, 2004 order, the trial court also substituted plaintiff for L.B. in FDU's lawsuit filed in connection with the past due balance, and entered a $6843 judgment against him.

[3] This order is not included in the record.

The parties' youngest child, S.B., enrolled at New Jersey City University in 2003, and graduated on September 8, 2008. She married later that month, on September 23, 2008. On May 24, 2016, plaintiff moved to emancipate S.B., then thirty years old, retroactive to her college graduation on September 8, 2008. Plaintiff requested that any child support and college contribution overpayments be applied towards the $30,000 lump sum pension payout required under the PSA, and sought attorney's fees. In response, except for agreeing that S.B. should be emancipated, defendant opposed the motion and cross-moved for enforcement of the pension provision of the PSA and attorney's fees and costs. In her supporting certification, defendant asserted she became permanently disabled in 2006, had a fire in her home in 2007, and stopped receiving child support payments around that time "until 2014," when she received "a lump sum payment" of approximately $26,000. While she did not oppose S.B.'s emancipation, she objected to plaintiff's request for recoupment of "any alleged overpayment based upon the unique circumstances of th[e] case," including the fact that prior to his May 2016 motion, "[plaintiff] took no action to stop child support payments."

According to defendant, she had "no viable means of earning additional money for retirement[,]" as she was then fifty-seven years old and had "planned

on receiving $30,000 from [plaintiff's] . . . pension in a lump sum." However, when she contacted his employer, she was informed that a "lump sum" payment could not be provided. As a result, she asked the court to "modify" the PSA "to provide that [plaintiff] be compelled to pay [her] . . . the sum of $30,000 now." To support her request, defendant attached a letter dated January 11, 2001, from the Division of Pensions and Benefits (Division) responding to her inquiry regarding plaintiff's pension account with the Police and Firemen's Retirement System (PFRS).

In the letter, the Division informed defendant that the PSA's language regarding equitable distribution of plaintiff's pension was "not acceptable for implementation" because, at that time, plaintiff was "not retired and not receiving monthly retirement allowances from the Division," and neither plaintiff nor defendant "as the alternate payee" was "entitled to . . . lump sum payments of retirement benefits[.]" The letter stated further that upon receipt of "a revised or amended court order" indicating, for example, that the Division was "to withhold either a specific dollar amount or a specific percentage of [plaintiff's] gross monthly retirement allowance," the Division "[could] and [would] implement such a revised or amended court order as soon as practical

6

after [plaintiff] retire[d]" and began receiving his monthly retirement allowances.[4]

In response, plaintiff explained that the $26,000 lump sum child support payment defendant received in 2014 resulted from a mix-up in connection with his wage garnishment and was through "no fault of [his] own."  He certified further that he "immediately took action in order to emancipate" S.B. after her college graduation by "reach[ing] out to [d]efendant on numerous occasions in order to resolve the issue without [c]ourt intervention as [he] did not have an address to serve [d]efendant with any motion papers at the time."  However, defendant "refused to discuss th[e] issue with [him,]" and "[f]or the past eight (8) years, [d]efendant . . . opportunely avoided th[e] issue."  Plaintiff continued that "[i]t was not until [2016] that [he] finally discovered where [defendant was] currently living, which enabled [him] to file this motion and properly serve her with same."  Plaintiff also objected to modifying the PSA to compel him to make a $30,000 lump sum payment now, asserting that despite receiving the letter from his employer in 2001, defendant waited fifteen years before taking any action to amend the PSA.  Additionally, plaintiff averred defendant had her own

---

[4]  Attached to the letter was a sample sheet containing "the type of language" appearing in "court orders" implemented by the Division.

State pension from her former employer, to which he "waived any and all claims" under the PSA.

In a July 15, 2016 order, the court ordered the parties to exchange updated Case Information Statements (CIS) by August 15, 2016, and return for a hearing on the respective motions. On September 16, 2016, without oral argument, the court granted defendant's motion in part, emancipating S.B. as of the filing date of plaintiff's motion, and awarded him credit for any payments made after that date. In the accompanying statement of reasons, the court explained that emancipation was "effective May 24, 2016," because the "child has reached the age of majority, and [d]efendant does not oppose emancipation[.]" The court also granted defendant's motion to enforce litigant's rights, ordering plaintiff to pay defendant $30,000 from his pension in accordance with the PSA, and awarding defendant $1925 in counsel fees. In support, the court indicated that plaintiff admitted in his moving papers "that he ha[d] not paid the $30,000[]" and was thus "in violation of the [PSA]." As to the counsel fee award, after considering the nine factors enunciated in Rule 5:3-5(c), including a finding that "[p]laintiff ha[d] not acted in good faith by violating various court orders and the [PSA,]" and that defendant prevailed on her cross-motion, the court determined that the fees were "reasonable."

Plaintiff moved for reconsideration of the provisions of the September 16, 2016 order pertaining to the effective date of S.B.'s emancipation, enforcement of the PSA's pension provision, and award of counsel fees. In his supporting certification, plaintiff reiterated that the emancipation date should have been effective in September 2008, when S.B. graduated from college and married. He submitted documents from Probation showing child support payments to defendant totaling approximately $35,336 from September 2008 to July 31, 2016.

Further, plaintiff certified that based on the January 11, 2001 letter from the Division, of which he was unaware until defendant's cross-motion, the pension provision in the PSA "cannot be enforced" because "[t]he plan provider does not allow a lump sum distribution." Thus, "[he] could not have violated the [PSA] if [he was] unaware that [his employer] could not divide the pension as stated within the [PSA]." He claimed that had he known, he "would have worked with [d]efendant to modify [the PSA,]" but he "should not be penalized for something that was not [his] fault." Plaintiff continued that although he retired on July 1, 2016, he had "not received [his] pension yet."[5] Thus, defendant would still be able to receive her share of his pension through monthly

_____
[5] Subsequently, plaintiff began receiving his pension in November 2016.

9                                              A-2806-16T2

distributions, as he did "not have the means to pay a $30,000[] lump sum to the [d]efendant."  Defendant opposed the motion and cross-moved for enforcement of the September 16, 2016 order, as well as attorney's fees and costs.

On December 2, 2016, during oral argument on the motions, the court stated that it "generally . . . emancipate[d] children . . . retroactive to the date of filing[.]"  While the court was "sensitive to what [plaintiff] may have gone through in the last . . . eight years," the court was "not convinced that [it] should go back to 2008" and did not "believe [it] acted incorrectly in [its] last order."  Skeptical of plaintiff's claim regarding his inability to locate defendant to serve her with motion papers earlier, the court elicited sworn testimony from the parties on the record.  Defendant testified that from 2008 to 2016, she moved "[t]wice."  She resided in the marital residence in Jersey City until a fire in 2008.[6]  Between 2008 and 2010, she moved to Irvington and then Union, before returning to a different address in Jersey City, where she remained since 2010.  Plaintiff countered that although they had children in common, the "children would not tell [him] where their mother lived."

---

[6] Defendant's testimony conflicted with her earlier certification in which she averred that the fire occurred in 2007.

On December 13, 2016, the court issued a written decision denying plaintiff's motion for reconsideration "without prejudice," determining that plaintiff failed to "meet his burden pursuant to [Rule] 4:49-2." However, the court granted defendant's cross-motion to enforce the September 16, 2016 order, directing plaintiff to pay a $30,000 lump sum payment and $1925 in counsel fees. Further, the court granted defendant's cross-motion for additional counsel fees in the amount of $3385, for having to file a second motion to enforce the PSA, and to respond to plaintiff's reconsideration motion.

In its findings of fact, initially, the court found that "[p]laintiff admitted he was aware [S.B.] could be emancipated as soon as 2008, when she graduated college and married." Further, "[defendant] has lived in Jersey City for the past six years" and "only moved twice in the eight years that [p]laintiff could not allegedly locate her to serve the motion papers." Additionally, according to the court, "[p]laintiff has not complied with the [PSA], whereby the parties agreed that [d]efendant would receive $30,000 of [p]laintiff's pension" and "did not propose an alternative to the lump sum payment . . . other than applying a credit of overpayment of child support."

In denying plaintiff's request to reconsider the effective date of S.B.'s emancipation, the court "view[ed] [p]laintiff as having less credibility than

11

[d]efendant," and found it "incredible that [p]laintiff could not locate [d]efendant for eight years[,]" despite "maintain[ing] communication with the children, who in turn communicated with [d]efendant." The court also noted that "[p]laintiff allowed his attorney to respond to the [c]ourt's questions and testified sparingly." Thus, the court concluded plaintiff's delay in filing for emancipation was "beyond unreasonable given his options to pursue substituted service of the motion or conduct[] a diligent inquiry search," pursuant to Rule 4:4-4(b). The court rejected plaintiff's "equitable argument" that "[d]efendant was not entitled to collect child support for [S.B.] because [she] already went through the process of emancipation twice before with the two other children." Applying the doctrine of laches, the court determined "[p]laintiff failed to exercise his legal right for eight years" and defendant "would now be harmed if the [c]ourt were inclined to credit eight years of overpayment against her."

The court also rejected plaintiff's request to reconsider enforcement of the pension provision of the PSA. The court dismissed plaintiff's contention, as constituting grounds for reconsideration, the fact that the "lump sum distribution" could not be implemented and that defendant was aware of this fact since 2001 but plaintiff was unaware until defendant's first cross-motion. According to the court, "[n]either party . . . sought to modify the [PSA] language

12

or file[d] a Qualified Domestic Relations Order to address [the] issue[,]" and plaintiff "did not propose" an alternate solution, other than offsetting the pension payout with the child support overpayment. Likewise, the court rejected plaintiff's request to reconsider the $1925 counsel fee award to defendant because the court upheld the enforcement action. Finally, after reviewing defense counsel's certification of services in connection with the current motions, the court concluded the requested fee of $3385 was "reasonable in light of the nine factors pursuant to [Rule] 5:3-5(c)." In particular, the court determined plaintiff acted in bad faith by "unreasonably delay[ing] . . . filing the motion[,]" while defendant brought her cross-motion "in good faith." The court entered a memorializing order and this appeal followed.

On appeal, plaintiff argues the court should have terminated his child support obligation retroactive to September 8, 2008, when S.B. graduated college, and he "should be given a credit for any child support payments subsequent to that date." Plaintiff further argues the court erroneously applied "the doctrine of laches" rather than "applying an equitable offset between the child support overpayments and amount due pursuant to the pension provision of the parties' PSA." Plaintiff explains the doctrine of laches "does not accomplish mutual fairness and equity between the parties considering the

totality of [the] circumstances," and the court "should have ordered a plenary hearing" rather than the "limited fact finding" conducted without "the benefit of discovery" before finding the doctrine applied. We agree and remand for further findings of the equitable factors relevant to plaintiff's request for retroactive emancipation of S.B. to 2008 and recoupment of child support overpayments.

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "Reconsideration cannot be used to expand the record and reargue a motion" but "is only to point out 'the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'" Capital Fin. Co. of Del. Valley Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt

14

either did not consider, or failed to appreciate the significance of probative, competent evidence.

[Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"In short, a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015). Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, 440 N.J. Super. at 382. An "abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis[.]" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, we are satisfied the trial court mistakenly exercised its discretion in denying plaintiff's motion for reconsideration "without prejudice." We conclude the court failed to consider or appreciate the significance of probative, competent evidence, and should have conducted a plenary hearing to resolve

15

genuine issues of material fact and give due consideration to the equitable factors pertinent to the retroactive emancipation of S.B and recoupment of child support overpayments. "[A]n equitable adjustment of the rights of the parties may vary from one case to another[,]" and must be considered in light of the facts in an individual case. Vasquez v. Glassboro Serv. Ass'n Inc., 83 N.J. 86, 108 (1980). "[T]rial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). "[I]f the proper disposition of a matrimonial dispute requires a plenary hearing, the dispute is by definition not subject to disposition on the papers, with or without oral argument." Fusco v. Fusco, 186 N.J. Super. 321, 329 (App. Div. 1982).

This case presents the equitable principles implicated in an obligor's application to emancipate a child and terminate child support retroactively, prior to the filing date of the motion, and recoup child support overpayments made from the date of emancipation. The parties agreed that S.B. should be emancipated. The dispute arose over whether plaintiff was entitled to an effective emancipation date of September 2008, when S.B. graduated from college and married, or May 2016, when he filed his motion seeking emancipation.

New Jersey's anti-retroactivity statute generally prohibits retroactive modification of an existing child support order to a date prior to the filing date of a motion for such relief, or forty-five days earlier upon written notice. N.J.S.A. 2A:17-56.23a. However, we have previously held that the anti-retroactivity statute does not prevent a retroactive termination of child support when a child is retroactively emancipated. See Bowens v. Bowens, 286 N.J. Super. 70, 73 (App. Div. 1995) (permitting retroactive emancipation and termination of child support where an obligor sought a retroactive cancellation of unpaid arrearages following the date of emancipation); Mahoney v. Pennell, 285 N.J. Super. 638, 643 (App. Div. 1995) (permitting the emancipation and termination of child support for two children two years apart in age, with each emancipation effective retroactive to each child's eighteenth birthday and holding "[w]here there is no longer a duty of support by virtue of a judicial declaration of emancipation, no child support can become due").

Here, while not expressly acknowledging its authority to retroactively emancipate a child and retroactively terminate child support, the court applied the doctrine of laches to bar plaintiff's request for relief. Undoubtedly, a court of equity may appropriately consider whether the doctrine of laches applies to prohibit a claim for retroactive emancipation and recoupment of child support.

17

"Laches is an equitable doctrine which penalizes knowing inaction by a party with a legal right from enforcing that right after passage of such a period of time that prejudice has resulted to the other parent[] so that it would be inequitable to enforce the right." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002). "The key ingredients" to the applicability of laches "are knowledge and delay by one party," coupled with a detrimental "change of position by the other [party]." Ibid. Thus, factors considered in determining whether to apply laches include "'[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin v. Bd. of Educ. of City of Hackensack, 90 N.J. 145, 152 (1982)). "While laches does not arise from delay alone," inequity "more often than not, will turn on whether a party has been misled to his harm by the delay." Ibid. (quoting Lavin, 90 N.J. at 153).

However, "unlike the periods prescribed by the statute of limitations," the constraints of laches "are not fixed" but are flexible enough to accomplish mutual fairness and equity in a given case. Lavin, 90 N.J. at 151. Factors to consider to accomplish "mutual fairness and equity" when a party seeks modification of a previously paid child support obligation prior to the motion filing date were thoroughly discussed in Harrington v. Harrington, 446 N.J. Super. 399, 411 (Ch. Div. 2016). There, the court identified a comprehensive

list of considerations relevant to a court's analysis at a plenary hearing of "the comparative equities of whether to retroactively modify child support." Id. at 411-12.

Those considerations include the length of time and reasons for the obligor's delay in filing the motion; whether "the non-custodial parent continue[d] to pay the same level of child support to the obligee" even after he could have filed the motion; "any fraud or misrepresentation" by the custodial parent that caused the obligor's delay in filing the motion; whether the "custodial parent failed to communicate facts that would have led to emancipation" at an earlier date and whether the non-custodial parent could "have nonetheless otherwise easily obtained such information with a reasonable degree of parental diligence and inquiry"; whether the "proposed retroactive modification of child support" would be "unduly cumbersome and complicated" to accurately calculate; whether the non-custodial parent seeks "only a credit," rather than "an actual return of child support already paid to, and used by, the custodial parent toward the financial expenses of the child living in the custodial parent's home"; and the potential of causing "an inequitable financial hardship" if the "custodial parent who previously received [the] funds in good faith" were required to repay the funds. Id. at 407-09.

Here, the court's ability to consider these factors was constrained by the fact that the court did not conduct a plenary hearing. While the court considered plaintiff's eight-year delay in filing the motion, and rejected his claim that the delay was due to his inability to locate defendant and serve her with the motion papers, there was no consideration by the court of defendant's obligation under the PSA to keep plaintiff informed of her place of residence. Further, it is difficult to assess on appeal any financial hardship defendant would suffer if ordered to reimburse plaintiff because the court only conclusively stated defendant would suffer hardship without further explanation. See Ricci v. Ricci, 448 N.J. Super. 546, 574-75 (App. Div. 2017) ("Rule 1:7-4(a) requires a judge, 'by an opinion or memorandum decision, either written or oral, [to] find the facts and state [all] conclusions of law . . . on every motion decided by a written order that is appealable as of right,'" to avoid "'a disservice to the litigants, the attorneys and the appellate court.'" (first quoting Fodero v. Fodero, 355 N.J. Super. 168, 170 (App. Div. 2002) (second and third alterations in original); and then quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))).

Notably, if defendant stopped receiving child support payments around 2006 or 2007, and did not receive additional payments until 2014 when she received a $26,000 lump sum payment, reimbursing plaintiff would not require

her returning money she received eight years prior and would undermine any financial hardship claim or detrimental shift in position. Moreover, if defendant received a lump sum child support payment in 2014 when her two older children were emancipated in 2004 and 2005, and the youngest married in 2008, the court may consider in assessing the comparative equities whether defendant received a benefit to which she was not entitled. See Loro v. Del Colliano, 354 N.J. Super. 212, 225-26 (App. Div. 2002) ("[A] custodial parent cannot[,] through the guise of the incidental benefits of child support[,] gain a benefit beyond that which is merely incidental to a benefit being conferred on the child.").

Plaintiff also argues that the court "erred in enforcing the pension provision of the parties' PSA" because "the provision is objectively impossible to fulfill." In light of our determination to remand for a plenary hearing to address plaintiff's request for retroactive emancipation of S.B. and recoupment of approximately $35,336 in child support overpayments, which he proposes to use as an equitable offset to the $30,000 pension payout, we need not address this argument at this time.

However, for the sake of completeness, we do note that on a reconsideration motion, "'if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the

first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence.'" Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria, 242 N.J. Super. at 401). Here, in his certification in support of his motion for reconsideration, plaintiff asserted that he had been unaware of the January 11, 2001 letter from the Division indicating that the pension provision in the PSA could not be implemented as written. However, the court failed to consider that evidence. On the remand, if necessary, we direct the court to be guided by the following principles in considering plaintiff's defense of impossibility.

In interpreting matrimonial agreements, courts apply equitable principles to ensure the agreement is fair and just, but apply contract principles to ascertain an agreement's meaning. See Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007). Supervening events that make performance of a contract impractical may excuse performance. M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 389-90 (2002). We have previously stated that:

> A successful defense of impossibility (or impracticability) of performance excuses a party from having to perform its contract obligations, where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the contracting parties.

[JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n Inc., 431 N.J. Super. 233, 246 (App. Div. 2013).]

Plaintiff also challenges the award of counsel fees in both the September 16 and the December 13, 2016 orders. Because the awards were primarily based on the court's finding of bad faith on the part of plaintiff, and defendant prevailing on her cross-motions, we vacate the awards pending resolution of the issues on remand. Accordingly, we reverse and remand the matter to the Family Part for a plenary hearing with discovery at the court's discretion. In remanding, we make clear that nothing within this opinion forecasts any views on the merits of these applications nor on the question of which party may be entitled to prevail after a full and complete consideration on the merits. We also point out, however, that denying plaintiff's reconsideration motion without prejudice, as the court did here, is inconsistent with compelling him to comply with the September 16, 2016 order.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2806-16T2