141 A.3d 1228

MICHAEL HARRINGTON, PLAINTIFF, v. STACY
HARRINGTON, DEFENDANT.

Superior Court of New Jersey
Chancery Division–Family Part, Ocean County

Decided March 16, 2016.

*Michael Harrington,* plaintiff pro se.

*Stacy Harrington,* defendant pro se.

L.R. JONES, J.S.C.

This case presents issues concerning retroactive emancipation and modification of previously unallocated, court-ordered child support, when the parties have multiple children. For the reasons set forth in this opinion, the court holds the following:

1) When parties have multiple children covered under an unallocated child support order, and a child becomes emancipated, such emancipation is a change of circumstance, for which either party may seek review and modification of the existing unallocated child support order;

2) In a situation where a parent seeks a retroactive modification of unallocated child support for multiple children based upon a child's emancipation, while there are still other unemancipated children, the court has the discretion to retroactively modify, or not modify, child support back to the date of a child's emancipation, depending upon certain equitable factors set forth in this opinion.

## FACTUAL BACKGROUND

Plaintiff and defendant divorced on February 15, 2012. At the time, they had three unemancipated daughters: [1] Jessica, (then a twenty-year-old college student), Ellen (then a seventeen-year-old high school student planning to attend college), and Susan (then a fifteen-year-old high school student). Under their settlement terms, the parties agreed to share joint legal custody of the children, with defendant serving as parent of primary residence. The parties further agreed that plaintiff would pay defendant $240 per week in child support. Notably, the child support was unallo-

---

[1] The court uses first name pseudonyms in place of the children's actual names.

cated, and not broken down or allocated into specific dollar amounts for each child, either on a one-third ($80 per child) basis or otherwise. Moreover, the parties agreed that plaintiff and defendant would each also reasonably contribute to the children's college education costs, with the amounts to be determined "at the time the college expense is incurred."

Thereafter, plaintiff did in fact pay unallocated child support to defendant of $240 per week, as agreed. At no time thereafter did either party file any motion to either enforce or increase, decrease, or otherwise modify the support agreement based upon any change of circumstances. Nor did either party seek to enforce the college contribution provision of the agreement. Instead, the parties simply continued to maintain the status quo, with defendant paying the unallocated child support of $240 per week as originally and mutually stipulated.

In September 2014, the parties agreed to emancipate both Jessica and Ellen, effective September 1, and 19, 2014, respectively. Two orders were entered confirming same, thereby leaving one remaining child, Susan, unemancipated. At the time, Susan was starting her senior year of high school and was uncertain as to whether she was going to attend college following graduation.

The parties did not raise or address with each other any proposed modifications (increases, decreases, or other changes) to defendant's ongoing child support obligation. In fact, for nearly a year-and-a-half thereafter, neither plaintiff nor defendant filed any motion with the court for a review and/or potential modification of the child support arrangements, based upon either a substantial change in circumstances arising from the consensual emancipation of two children, or for any other reason. Further, neither party requested, submitted or exchanged any updated case information statements setting forth their current incomes and updated financial documentation and information, which would have been necessary for review had either party in fact filed a formal motion for the court to modify child support.

In June 2015, Susan graduated high school. At the time, there was still ongoing uncertainty as to whether she would or would not continue her education by attending community college in September 2015. She did, however, continue residing with her mother, and this living arrangement was fully known to both parents at all times. Meanwhile, plaintiff continued to pay the same $240 per week to defendant, without any stated objection or protest from either party. Ultimately, in September 2015, Susan elected not return to school, but did continue living with her mother, again with her father's full knowledge. Susan also obtained a small part-time job.

On February 11, 2016, approximately a year-and-a-half after the September 2014 orders emancipating Jessica and Ellen, plaintiff filed a motion with the court, without prior notice to or discussion with defendant. In his application, plaintiff sought various forms of relief, including a court order retroactively allocating the previously unallocated support from $240 per week to $80 per week per child, back to September 2014, and then decreasing his unallocated child support obligation of $240 by two-thirds, or by $160 per week ($80 per week for each of the two emancipated children) to $80 per week, effective September 10, 2014. He then sought to emancipate Susan and terminate the final $80 per week obligation, retroactive to July 1, 2015, i.e., shortly after Susan's high school graduation.

In response, defendant consented to the present emancipation and termination of child support for Susan (effective her emancipation date, which was ultimately determined to be September 1, 2015). She objected, however, to plaintiff's request for a retroactive modification of child support from $240 per week to $80 per week effective retroactively to September 10, 2014, through the date of Susan's emancipation. Defendant argued that plaintiff never previously filed a timely and proper motion to modify the unallocated child support arrangement following the September 2014 emancipation of their two oldest daughters, even though he had every right and ability to do so at any time. Instead, plaintiff

simply continued to follow the existing child support order and pay the unallocated support funds to defendant, who accepted the money in good faith and used the proceeds to help maintain the primary residence of the parties' remaining unemancipated daughter.

Hypothetically, while an emancipation motion filed in September 2014 may have theoretically resulted in a review and a potential modification of child support a year-and-a-half ago, plaintiff never filed such a motion. Defendant thus contends that, pursuant to New Jersey's anti-retroactivity statute, *N.J.S.A.* 2A:17–56.23a, the court should not permit plaintiff to retroactively decrease or otherwise adjust unallocated child support for any date prior to Susan's emancipation.

By consent, the parties agreed to treat the emancipation date of both Jessica and Ellen as September 10, 2014. Originally, Jessica was emancipated as of September 1, 2014, and Ellen was emancipated as of September 19, 2014. As the eighteen-day gap had only a de minimus effect on the child support analysis in this case, for the sake of clarity and simplicity, the parties agreed to proceed as if both children were by consent emancipated on the same date of September 10, 2014, which is a relative midpoint between September 1 and 19, 2014.

## LEGAL ANALYSIS

### RETROACTIVE MODIFICATION OF UNALLOCATED SUPPORT: ONE–AND–A–HALF YEARS AFTER EMANCIPATION OF TWO CHILDREN

In this case, there are two established legal principles that arguably lead to opposite conclusions. First, New Jersey has an anti-retroactivity statute, which generally prohibits retroactive modification of an existing child support order to a date prior to the filing date of a motion for such relief, or forty-five days earlier upon written notice. Specifically, *N.J.S.A.* 2A:17–56.23a states in pertinent part:

[N]o payment or installment of an order for child support, or those portions of an order which are allocated for child support established prior to or subsequent to the effective date of [N.J.S.A. 2A:17–56.23a], shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent. The written notice will state that a change of circumstances has occurred and a motion for modification of the order will be filed within 45 days. In the event a motion is not filed within the 45–day period, modification shall be permitted only from the date the motion is filed with the court.

Reciprocally, however, there is case law that stands for the proposition that the anti-retroactivity statute does not prevent a retroactive termination of child support when a child is retroactively emancipated. *See Bowens v. Bowens,* 286 *N.J.Super.* 70, 668 *A.*2d 90 (App.Div.1995); *Mahoney v. Pennell,* 285 *N.J.Super.* 638, 667 *A.*2d 1119 (App.Div.1995). A close reading of these two opinions, however, reveals that neither case dealt with the type of situation presented here where (a) there are multiple children; (b) there is an existing unallocated child support order; (c) there is an emancipation of one or more, but not all of the children; (d) there has been a lengthy period of time between the emancipation of one or more children, and the date of filing of the motion to modify support, and (e) there has been ongoing payment of unallocated child support by the non-custodial parent, and receipt of the child support by the custodial parent, all in good faith.

In *Bowens, supra,* 286 *N.J.Super.* at 73, 668 *A.*2d 90, the court permitted retroactive emancipation and termination of child support. *Bowens,* however, did not have to address the issue of retroactively adjusting unallocated child support among multiple unemancipated children, as the parents only had one child, who was the sole subject of the child support obligation at issue. Moreover, *Bowens* dealt with an obligor who was seeking only a retroactive cancellation of unpaid arrearages following the date of emancipation. *Id.* at 73, 668 *A.*2d 90.

In *Mahoney, supra,* 285 *N.J.Super.* at 643, 667 *A.*2d 1119, the appellate court held that a family court may retroactively emancipate a child and terminate child support as of the date of emanci-

pation, without violating New Jersey's anti-retroactivity statute, *N.J.S.A.* 2A:17–56.23a. The *Mahoney* court permitted the emancipation of two children two years apart in age, with each emancipation effective retroactive to each child's eighteenth birthday. Notably, however, the existing child support order was not unallocated, but rather, specifically allocated at $45 per week per child. *Id.* at 639, 667 *A.*2d 1119. Therefore, the court did not have to address the factual circumstances and legal issues that arise when a non-custodial parent seeks a retroactive modification of unallocated support prior to the motion filing date. Further, because both children in *Mahoney* were ultimately emancipated, the *Mahoney* court did not address, and did not have to address, the independent issue of whether a retroactive modification of unallocated child support constitutes a violation of the anti-retroactivity statute relative to any remaining unemancipated child or children.

*Mahoney* also did not address how a retroactive modification of child support affects child support already paid by the obligor, which was received and spent in good faith by the custodial parent on an unemancipated child and the various equitable factors that may need to be considered in such circumstance. In Mahoney, the court stated: "We hold ... that *N.J.S.A.* 2A:17–56.23a does not bar the cancellation of child support arrearages which accrued subsequent to the date of the minor's emancipation as retroactively determined, by the court." *Id.* at 643, 667 *A.*2d 1119.

█ Neither *Bowens* and *Mahoney* provide direct authority or specific instruction on how to unravel and deal with the complex factual issues that arise in scenarios involving multiple unemancipated children, unallocated child support, and a lengthy gap in time between the date of a child's alleged emancipation and a subsequent motion by the non-custodial parent for retroactive adjustment of unallocated child support. Further, while *Bowens* and *Mahoney* establish that the anti-retroactivity statute does not prohibit a court from crediting unpaid support arrears and modifying support to the date of a child's emancipation, neither case stands for the proposition that the law automatically requires a

retroactive modification of unallocated child support, regardless of any distinguishable factual and equitable circumstances that may exist.

What law, then, applies in the present case? Does the anti-retroactivity statute apply so as to prohibit retroactive modification of unallocated child support, or do the principles of *Bowens* and *Mahoney* apply so as to support retroactive modification of child support? Put another way, may an existing, unallocated child support obligation for multiple children be retroactively modified prior to the filing date of a motion to reduce support, based upon a child's prior emancipation, or does such modification violate the anti-retroactivity provisions of *N.J.S.A.* 2A:17–56.23a as relating to the unemancipated children?

In a court of equity, a decision on this issue must be based on an analysis of facts, rather than rote implementation of an abstract principle. Facts, not principles of law, ultimately decide cases. *Bendix Corp. v. Dir., Div. of Taxation,* 125 *N.J.* 20, 41, 592 *A.*2d 536 (1991). Depending on the circumstances, an equitable adjustment of the rights of the parties may vary from one case to another. *Vasquez v. Glassboro Serv. Ass'n,* 83 *N.J.* 86, 108, 415 *A.*2d 1156 (1980). Principles of law are not to be applied in the abstract, but must be considered in light of the facts in an individual case. *Hanover Ins. Co. v. Franke,* 75 *N.J.Super.* 68, 74, 182 *A.*2d 164 (App.Div.1962), *cert. denied,* 38 *N.J.* 308, 184 *A.*2d 421 (1962); *McKinley v. Naters,* 419 *N.J.Super.* 205, 211, 16 *A.*3d 479 (Ch.Div.2010).

■ Given the mixed nature of this circumstance, the court finds that the solution must be fact-sensitive in nature, giving due consideration to various equitable factors and considerations, including but not necessarily limited to the following:

1) How much time has passed between the date of one child's emancipation and the filing date of the obligor's present motion for retroactive modification of unallocated child support for the remaining unemancipated child or children?

2) What are the specific reasons for any delay by the obligor in filing a motion to review support based upon emancipation?

3) Did the non-custodial parent continue to pay the same level of child support to the obligee, either by agreement or acquiescence, and of his or her own decision and free will, even after he/she could have filed a motion for emancipation at a prior point in time?

4) Did the custodial parent or child engage in any fraud or misrepresentation that caused the obligor's delay in filing a motion for emancipation and support modification motion?

5) If the non-custodial parent alleges that the custodial parent failed to communicate facts that would have led to emancipation and modification of support at an earlier date, could the non-custodial parent have nonetheless otherwise easily obtained such information with a reasonable degree of parental diligence and inquiry?

6) If the obligor's child support obligation was unallocated between multiple unemancipated children of the parties, will a proposed retroactive modification of child support over a lengthy period of time be unduly cumbersome and complicated, so as to call into question the accuracy and reliability of the process and result?

7) Did the custodial parent previously refrain from seeking to enforce or validly increase other financial obligations of the non-custodial parent, such as college contribution for any remaining unemancipated child, because during such time period, the non-custodial parent continued to maintain the same level of unallocated child support without seeking a decrease or other modification?

8) Is the non-custodial parent seeking only a credit against unpaid arrears, or rather an actual return of child support already paid to, and used by, the custodial parent toward the financial expenses of the child living in the custodial parent's home?

9) If the non-custodial parent seeks an actual return of money previously paid to the custodial parent, what is the estimated

dollar amount of child support that the noncustodial parent seeks to receive back from the custodial parent, and will such amount likely cause an inequitable financial hardship to the custodial parent who previously received such funds in good faith?

10) Are there any other factors the court deems relevant to the analysis?

The court schedules a hearing to analyze these factors, weigh the comparative equities, and determine whether to exercise its discretion and retroactively modify unallocated child support prior to the motion filing date, based upon a prior emancipation of one or more children. In the present case, such a fact-finding hearing is appropriate and will take place prior to the court's rendering a final decision in this matter.

[At the court's discretion, a portion of the court's ruling has been omitted from the published opinion.]

## APPLICABILITY OF EQUITABLE FACTORS
## TO THE PRESENT CASE

In applying the aforementioned ten equitable factors to the present case, there are some preliminary points to consider. First, a lengthy period of nearly a year-and-a-half has passed between the effective date of emancipation for the two older children and the filing date of the present motion. Second, plaintiff has thus far supplied no reason at all to justify or explain such lengthy delay. Third, during the extensive time period between the two older children's emancipation and the present motion, plaintiff continued to pay the same level of child support to defendant, i.e., $240 per week, without objection, even when he could have filed a motion to modify child support at any point of time. Fourth, there is no evidence submitted thus far that defendant or the children engaged in any type of fraud or misrepresentation that caused plaintiff's delay in filing a motion for a support modification. Nor does plaintiff allege any deception or other wrongdoing.

Fifth, plaintiff does not contend that defendant or any child failed to communicate facts that would have led to a modification of support at earlier date. Sixth, a proposed retroactive modification of child support all the way back to September 2014 may well be unduly cumbersome and complicated, particularly given that defendant has not even supplied a case information statement or any other documentation reflecting his income, budget, and financial history for 2014–2016, with the exception of 1099 forms. Further complicating the request for retroactive relief back to September 2014 is the fact that the court now has to attempt to go backwards and retroactively change support for a remaining child who since turned eighteen, and who therefore is not necessarily covered on a mandatory basis under New Jersey's Child Support Guidelines.

While the court will permit a hearing on the matter and permit each party to address these issues, it appears at this preliminary juncture that there may be a host of complexities and difficulties in attempting to go backward in time and try to recreate what a revised child support order *might* have looked like, had the non-custodial parent filed a more timely application for emancipation and modification of child support. The present circumstances of the parties, including their incomes, financial resources, and even parenting schedules, may have fluctuated one or more times during the intervening period. Such developments may render attempts to retroactively reconstruct and modify one's support obligation during such time period as potentially speculative, imprecise, and even convoluted. Under such a scenario, while a court of equity might elect to attempt such effort in a particular case, a court may also logically refrain from such an exercise in its equitable discretion, particularly when the proofs show that circumstances were created in substantial part by a litigant who unreasonably delayed filing a modification motion, and who could have brought a more timely application much earlier, but simply elected not to do so.

Here, the evidence reflects that plaintiff continued to pay the $240 per week support after September 10, 2014, without any notice to defendant that he was seeking reimbursement or paying under protest. Therefore, defendant logically may have had every reason to rely in good faith upon plaintiff's actions in continuing to accept the funds and use same towards maintaining the household where the remaining unemancipated child still resided. Further, it is unclear from the outset whether plaintiff is or is not seeking actual return of monies previously paid by him to defendant.

In any case concerning a request for retroactive modification of previously paid and unallocated child support obligation, there will always be a need to consider the nature and extent of any delay in filing the motion, and the reasons for such delay. In this respect, a court may appropriately consider whether under all the foregoing factors, the doctrine of laches may apply to prohibit a claim for retroactive adjustment of unallocated child support. Laches is an equitable doctrine that addresses knowing inaction by a party with a legal right from enforcing that right after passage of such a period of time that prejudice has resulted to the other parent, so that it would be inequitable to enforce the right. *L.V. v. R.S.*, 347 *N.J.Super.* 33, 39, 788 A.2d 881 (App.Div.2002). The key ingredients to the applicability of laches are knowledge and delay by one party, coupled with a detrimental shift in position by the other party. *Ibid.*

Factors considered in determining whether to apply laches include the length of the delay, and changing conditions of either or both parties during the delay. *In re Kietur*, 332 *N.J.Super.* 18, 28, 752 A.2d 799 (App.Div.2000). The constraints of laches, unlike the periods prescribed by a statute of limitations, are not fixed but are characteristically flexible to meet the needs of accomplishing mutual fairness and equity in a given case. Hence, the doctrine of laches may potentially be applicable in this matter.

## CONCLUSION

For all of the foregoing reasons, the court schedules this matter for a plenary hearing to review and consider the comparative

equities of whether to retroactively modify child support prior to the motion filing date under these specific circumstances.