**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4687-16T3

KIMBERLY ROBINSON,

    Plaintiff-Respondent/
Cross-Appellant,

v.

ARMANDO ONORATI,

    Defendant-Appellant/
Cross-Respondent.

_____

> Argued February 4, 2019 – Decided March 14, 2019
>
> Before Judges Messano and Gooden Brown.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0489-03.
>
> Michael H. Nieschmidt argued the cause for appellant/cross-respondent.
>
> Jennifer D. Zoschak argued the cause for respondent/cross-appellant (Oswald & Zoschak, PC, attorneys; Jennifer D. Zoschak, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant (ex-husband) appeals from the May 26, 2017 Family Part order, emancipating the parties' son, born January 1995; recalculating child support and ordering college contributions for the parties' unemancipated daughter, born October 1999; and denying him counsel fees.  Defendant argues the motion judge erred in emancipating their son at the end of his first college semester, rather than when he graduated from high school; finding his request to compel production of their son's college transcripts moot; recalculating child support based upon an erroneous emancipation date and plaintiff's (ex-wife) underemployed income; ordering college contributions for their daughter without considering the factors enumerated in Newburgh v. Arrigo, 88 N.J. 529 (1982); and failing to analyze the requisite factors in denying him counsel fees.  For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.[1]

---

[1]  Although plaintiff cross-appealed from the provisions of the order emancipating the parties' son effective December 11, 2013, denying her request for contribution to his college expenses, and denying her request for fees and costs, she did not brief those issues in her merits brief.  "[A]n issue not briefed is deemed waived."  Pressler & Verneiro, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).  See also Telebright Corp. v. Dir., Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).  Accordingly, plaintiff's "cross-appeal must be considered abandoned." Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001).

A-4687-16T3

The parties married in 1997 and divorced in 2003. Under the parties' property settlement agreement (PSA), which was incorporated into their June 25, 2003 final judgment of divorce (FJOD), the parties had "joint custody" of the children, with plaintiff designated "the parent of primary residence." Pursuant to the PSA, defendant was required to pay child support of $137 per week, "in accordance with the New Jersey Child Support Guidelines" (Guidelines). The child support payment was calculated with plaintiff and defendant "having gross taxable income" of "$680[]" and "$671[] per week[,]" respectively. Further, under the PSA, child support "payments shall continue until the children are emancipated in accordance with the decisional law of the State of New Jersey."

Regarding college contributions, the PSA specified:

> [N]o consideration [was] given in this [PSA] with respect to the college education expenses of the[] children or the direct support, if any, to be paid on behalf of said child in the event that a child pursues a post high school education. That issue [was] expressly reserved for future determination and if the parties [were] not able to reach agreement, then in that event, they may apply to the [c]ourt for a judicial determination as to their respective responsibilities.

On April 4, 2017, defendant moved to compel plaintiff to provide him with copies of their son's college transcripts; emancipate their son effective

3

December 11, 2013, the last date he was believed to have attended college as a full-time student; recalculate child support for their daughter, effective December 11, 2013; credit defendant for all child support overpayments; and award defendant counsel fees. Defendant supplied the court with financial documents from 2013 to 2016, as well as a current Case Information Statement (CIS), as required by Rule 5:5-4(a).

Regarding emancipation, in his supporting certification, defendant asserted that their son, A.O., "graduated from high school in June 2013," and "began attending Mercer County Community College [(Mercer County),]" a "[two-year] institution," in the Fall 2013 semester. According to defendant, both A.O., with whom he had a "strained" relationship, and plaintiff advised him that A.O. "was attending college full[-]time" and "was doing well with his studies[,]" leading defendant to believe A.O. would graduate in May 2015. However, when "[p]laintiff informed [him] that [A.O.] would be continuing his studies at [Mercer County] in the Fall [2015] [s]emester," he requested from both of them, "copies of . . . grade reports and transcripts from [Mercer County]" to resolve the inconsistency.

According to defendant, despite his repeated requests, "[a]t no time" was he "ever provided" with A.O.'s "transcripts," or "grade reports," from Mercer

A-4687-16T3

County. Instead, he was only given "registration print[-]outs" for certain semesters. Defendant asserted that a review of those "registration print[-]outs" showed that "at most," A.O. only "attended [Mercer County] full[-]time . . . in the Fall [2013] [s]emester, which ended on December 11, 2013." Additionally, according to defendant, while attending college, A.O. "worked on average five . . . days per week at two . . . different positions[,]" as a "[l]ot [a]ttendant" for a "new car dealer" and a "[d]ishwasher and [d]river for a local pizzeria[.]"

Regarding the recalculation of child support, defendant certified that since the divorce, both parties remarried and, pursuant to a "[c]onsent [o]rder of January 7, 2010," the court increased his child support obligation from the PSA amount to $200 weekly "based on [the parties'] agreed upon [weekly] income" of "$867" for plaintiff and "[$1121]" for defendant. Thereafter, following the birth of a child with his new wife in March 2010, on September 27, 2010, "the [c]ourt granted [his unopposed] application" to reduce "[his] [c]hild [s]upport obligation [to] $162 per week," using the same income figures specified "in the January 7, 2010 [c]onsent [o]rder . . . , but also factoring in the income of [his] current spouse" and "day care" expenses. Defendant acknowledged that he was unaware of plaintiff's current earnings but believed "she continue[d] to work in the exact same type of dental assistant/hygienist position in which she has

historically worked[,]" and "assume[d]" that "commensurate with inflation," her weekly "earnings have increased" from the $867 she "agreed" to in the January 7, 2010 consent order.

Finally, defendant asserted that "[p]laintiff's refusal to provide [him] with [A.O.'s] academic records . . . [violated] the provisions of the [PSA,]" requiring both parties "from time to time, at the request of the other[,] . . . [to] deliver[] to the other party any and all further instruments that [may] be responsibly required to give full force and effect to the provisions of [the PSA]." Accordingly, defendant sought counsel fees based on plaintiff's "bad faith" and "lack[]" of "integrity."

Plaintiff opposed the motion and cross-moved to recalculate child support, require the parties to contribute to the college expenses of both children in proportion to their respective income, and award her counsel fees. Regarding emancipation, in her reply certification, plaintiff averred that in the Fall 2013 semester, A.O. "signed up [at Mercer County] for thirteen . . . credits," but failed one class and "earned ten . . . credits" for that semester. However, "[o]ver the last three . . . years," A.O. "continued to take classes and [was] due to graduate with an Associate[] in Science Degree" after completing the Summer 2017 semester. Thereafter, A.O. "plan[ned] to attend [Rowan University] beginning

Fall 2017." Plaintiff acknowledged that despite receiving assistance with expenses from her and her new husband, A.O. "has worked part-time jobs in order to pay for his education" and "[i]n 2014," had "to work more hours" and "take fewer classes." However, she denied "'represent[ing]' anything to [d]efendant about [A.O.'s] grades[,]" and explained that "[l]ike many students," A.O. "withdrew from classes" that "he felt . . . were too difficult," and "'tested the waters,' taking classes he thought might be of interest." Attached to her certification, plaintiff submitted a computer print-out of A.O.'s Mercer County transcript and grades, showing he earned fifty-seven of the seventy-six credits needed to graduate, as well as Mercer County registration statements ranging from the Fall 2013 semester to the Summer 2017 semester.

Regarding college contributions, plaintiff sought an order requiring both parents to contribute to both A.O.'s college expenses as well as their daughter's, G.O., who was still in high school but "[would] be attending college in another year[.]" Plaintiff asserted she did "not want to have to file a motion and spend money . . . just to answer the question of whether or not [d]efendant will contribute." Regarding the recalculation of child support, plaintiff certified she also had another child with her new spouse and was entitled to the other dependent deduction. Plaintiff averred she worked as "a dental assistant" with

7

gross weekly earnings of $633, as evidenced by her 2016 tax return attached to her CIS. Factoring in her new husband's earnings, plaintiff believed child support for A.O. and G.O. should be $197 weekly, and $172 for G.O. alone if A.O. was emancipated. As to counsel fees, plaintiff denied she "refused to cooperate in the past" or "acted in bad faith," and explained that "[defendant] never approached [her] to discuss [their] son's status, and . . . never discussed it with [their] son directly." Thus, given "the disparity in [their] incomes," plaintiff sought an award of "counsel fees."

In a reply certification, defendant countered that based on the Mercer County records submitted by plaintiff, "[A.O.] has been attending Mercer County . . . for four . . . years[,]" but "[o]ut of eight . . . semesters," he was "a part-time student for six" and "a full[-]time student" for "only . . . the two . . . most recent semesters." Accordingly, defendant urged the court "to emancipate [A.O.], effective his high school graduation day [in] June 2013," rather than December 2013 as he had originally requested.

Regarding contributing to G.O.'s college expenses, defendant asserted he had no objection to "paying whatever the [c]ourt determine[d]." However, defendant noted he had been "left out" of any "discussion" regarding G.O.'s college attendance "[]just like with [A.O.]" Additionally, defendant noted that

"[p]laintiff's household income" and "household balance sheet" were "far, far superior to" defendant's, and, when they divorced, neither party had "an expectation" that their "children would attend college," as both parties "only attended trade-schools, earning two . . . year degrees."

As to the recalculation of child support, defendant disputed plaintiff's claim that her gross weekly income was $633. According to defendant, "back in January 2010," plaintiff "agreed" to be imputed $867 as weekly gross income because she "acknowledged . . . that she was underemployed." Defendant asserted that currently, "[p]laintiff's full[-]time earnings should . . . be $960 weekly" because "a review of [her] pay stubs provided with her [CIS] reveal[ed] that [she was] only working around twenty[-]six . . . hours per week at $24 per hour[,]" indicating that she was still voluntarily underemployed.

Following oral argument, on May 26, 2017, in an oral opinion from the bench, the judge granted in part, and denied in part, defendant's motion. As to emancipation, "given [A.O.'s] age, [and] the sporadic and pervasively part[-]time attendance at post[-]secondary education," the judge emancipated A.O., effective December 11, 2013, the first date he failed to maintain a full-time credit load at Mercer County. The judge credited A.O.'s perseverance but could not "find that his lengthy and part[-]time participation in post[-]secondary

education suffice[d] to defeat defendant's application for emancipation."  In that regard, the judge rejected plaintiff's argument that A.O. remained within the sphere of influence and "took a light course load because of his need to work two part[-]time jobs."  The judge determined that defendant did not "contribute to [A.O.'s] need to work" because defendant was up-to-date in his child support payments and had "no recent history of non-payment."  See Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) ("essential [to the emancipation] inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own'" (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995))).

In light of his decision, the judge denied as "moot" defendant's request for all of A.O.'s college transcripts because plaintiff provided them with her "opposition" and "cross-motion," and "the [c]ourt's disposition of . . . defendant's claims for relief eliminate[d] defendant's ongoing need for those . . . transcripts." The judge acknowledged that the transcripts were not "official," but noted "there was no real question as to [their] authenticity or completeness."

Likewise, the judge "denie[d] defendant's application for a retroactive modification of . . . child support back to [2013]."  Instead, the judge ordered "the recalculation of child support" to "be effective April 4[], 2017, the filing

date of defendant's application[,]" obviating the need for any overpayment credit. The judge acknowledged that "[a]lthough the retroactivity statute, specifically N.J.S.A. 2A:17-56.23[a,] does not prohibit the retroactive diminution of child support in instances of emancipation, the statute does not require it, nor does it strip the Family Part judges of their discretion to fashion court orders that would avoid injustice."

Observing that "a retroactive disgorgement of child support" from plaintiff would "be substantial[,]" and child support payments were "used for the benefit of the children" the judge concluded that "it would be an unnecessary hardship" and "an injustice upon [plaintiff] . . . to [so] order." The judge explained "plaintiff has supported the children, including [A.O.], by way of continuing to provide them housing, providing tuition assistance, and other forms of support. To retroactively require disgorgement would be unjust and unfair."

Turning to plaintiff's cross-motion, the judge granted her application to recalculate child support "to provide both parties with appropriate credit for the other dependent deduction[,]" given that "[b]oth parties now have . . . new family members for whom they are responsible." However, the judge's order recalculating defendant's child support obligation to $172 weekly was based

11

upon plaintiff's gross weekly income of $633, which defendant had vehemently disputed. As to plaintiff's application for college contributions, the judge determined that "[b]y consent of the parties, both parents shall contribute to the college expenses of [G.O.,]" who was then "a junior" in high school, and planned "to attend college" after graduation.

The judge continued:

> Plaintiff also seeks an order that the parties are responsible proportionate to their income. Defendant objects[,] arguing that [it is] too speculative at this point and that that determination should not be made until such time as more particulars are known with respect to tuition and the other factors elucidated in Newburgh . . . .

> The [c]ourt understands defendant's argument, however, every dollar spent on counsel fees to litigate questions of college contribution is one dollar less spent on the post[-]secondary education of the parties['] child. So without prejudice to a future determination of the parties['] respective contributions, by way either of mutual agreement between the two of them or future order of this court, the parties shall contribute to [G.O.'s] college expenses in proportion to their income as calculated by the [Guidelines], specifically [thirty-five] percent plaintiff, [sixty-five] percent defendant.

Finally, the judge denied both parties' requests for counsel fees, "determin[ing] that both parties shall be responsible for their own legal fees." The judge explained:

12

[B]oth parties on the different issues that they raise in their respective applications, raise positions that were reasonable, they had a fair degree of success on both parties['] applications and, likewise, the [c]ourt finds that based upon the ability to pay, that both parties have the ability to pay their own counsel fees and costs.

The judge entered a memorializing order and this appeal followed.

The scope of our review of a Family Part order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We generally defer to the Family Part's fact-finding because of the court's "special expertise" in family matters and ability to make credibility determinations. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). We defer to a judge's findings of fact unless they lack support in the record or are inconsistent with the substantial, credible evidence. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). We likewise defer to the Family Part on decisions that are committed to the trial court's exercise of discretion. Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). However, we owe no special deference to the court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Also, if the "court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008).

A-4687-16T3

On the issue of emancipation, we have said that "[n]o specific age equates to emancipation of a child[,]" and attainment of the age of eighteen is only prima facie "and not conclusive proof" of emancipation. Patetta v. Patetta, 358 N.J. Super. 90, 93 (App. Div. 2003). The child's needs are determinative, and "enrollment in a full-time educational program" may compel continued support. Id. at 94. While the fact that a child may "take a brief hiatus from educational pursuits," does not, in and of itself, demonstrate the child has "moved beyond the sphere of influence of [his] parents[,]" Keegan v. Keegan, 326 N.J. Super. 289, 295 (App. Div. 1999), a child's lack of commitment to his education, or the unexcused failure to remain a diligent, full-time student may be a basis for emancipation because our law does not require "support and concomitant deferred emancipation for a child unable to perform adequately in his academic program." Filippone, 304 N.J. Super. at 311-12.

Here, we discern no abuse of discretion in the judge's decision to emancipate A.O. effective December 11, 2013, the first date he failed to maintain a full-time college credit load, rather than after he graduated from high school as urged by defendant. Likewise, we agree that defendant's continued request for A.O.'s official Mercer County transcripts was rendered moot by the judge's decision. An issue is considered moot when the "decision sought in a

14

matter, when rendered, can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)).

As to the judge's decision to recalculate child support retroactive to the date defendant filed his motion, rather than the emancipation date, New Jersey's anti-retroactivity statute generally prohibits retroactive modification of an existing child support order to a date prior to the filing date of a motion for such relief, or forty-five days earlier upon written notice. N.J.S.A. 2A:17-56.23a. However, we have previously held that the anti-retroactivity statute does not prevent a retroactive termination of child support when a child is retroactively emancipated. See Bowens v. Bowens, 286 N.J. Super. 70, 73 (App. Div. 1995) (permitting retroactive emancipation and termination of child support where an obligor sought a retroactive cancellation of unpaid arrearages following the date of emancipation); see also Mahoney v. Pennell, 285 N.J. Super. 638, 643 (App. Div. 1995) (emancipating and terminating child support for two children two years apart in age, with each emancipation effective retroactive to each child's eighteenth birthday, and holding "[w]here there is no longer a duty of support by virtue of a judicial declaration of emancipation, no child support can become due").

A-4687-16T3

Factors to consider to accomplish "mutual fairness and equity" when a party seeks modification of a previously paid child support obligation prior to the motion filing date were thoroughly discussed in Harrington v. Harrington, 446 N.J. Super. 399, 411 (Ch. Div. 2016). There, the court identified a comprehensive list of considerations relevant to a court's analysis of "the comparative equities of whether to retroactively modify child support." Id. at 411-12.

Those considerations include the length of time and reasons for the obligor's delay in filing the motion; whether "the non-custodial parent continue[d] to pay the same level of child support to the obligee" even after he could have filed the motion; "any fraud or misrepresentation" by the custodial parent or the child that caused the obligor's delay in filing the motion; whether the "custodial parent failed to communicate facts that would have led to emancipation" at an earlier date and whether the non-custodial parent could "have nonetheless otherwise easily obtained such information with a reasonable degree of parental diligence and inquiry"; whether the "proposed retroactive modification of child support" would be "unduly cumbersome and complicated" to accurately calculate; whether the non-custodial parent seeks "only a credit," rather than "an actual return of child support already paid to, and used by, the

A-4687-16T3

custodial parent toward the financial expenses of the child living in the custodial parent's home"; the potential of causing "an inequitable financial hardship" if the "custodial parent who previously received [the] funds in good faith" were required to repay the funds; and "any other factors the court deems relevant to the analysis[.]" Id. at 407-09.

Here, we discern no abuse of discretion in the judge's determination that because the overpayment would be substantial and plaintiff used the child support payments for the benefit of A.O., a retroactive disgorgement by plaintiff would create an unnecessary financial hardship that would be "unjust and unfair." Given the judge's keen awareness of plaintiff's financial circumstances, we see no reason to interfere with his imposition of an equitable remedy.

Turning to defendant's contention that the judge erred in recalculating the child support payment based on plaintiff's "underemployed" income, in calculating child support, the court is obliged to consider the "potential earning capacity of an individual, not his or her actual income[.]" Caplan v. Caplan, 182 N.J. 250, 268 (2005) (quoting Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999)). When a parent is "voluntarily unemployed or underemployed" "without just cause," income should be imputed to "promot[e] a fair and just allocation of the support obligation" of both parents, id. at 268-

69, and when a party appeals a decision to impute or not impute income, we will only disturb the result if "the underlying findings are inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 474-75 (App. Div. 2004).

Here, defendant contends the judge erred by failing to, at the very least, impute to plaintiff the $867 weekly income she agreed to in the January 7, 2010 consent order that was reaffirmed in the September 27, 2010 court order, and instead accepting plaintiff's claim that her weekly income was $633. During oral argument, when the judge queried plaintiff's attorney on defendant's claim that she was "deflating [her] client's income[,]" plaintiff's attorney responded:

> My client is working [twenty-six] hours a week. She works part[-]time, everybody in her office works part[-]time. There is no full[-]time employment available . . . . [W]hen you work full[-]time and [you are] being provided with benefits, [you are] not getting $24 an hour, [you are] going to be earning significantly less per hour. So [it is] going to even up as it is.

Without hearing any testimony, the judge accepted plaintiff's claim and her attorney's representation that her weekly income was $633, despite defendant's contrary claim and clear evidence in the record of a higher income attributed to her in the past. We thus conclude the judge's decision was not supported by competent evidence. That reason, standing alone, is a sufficient

18

basis for reversing the child support order and remanding for a hearing on plaintiff's earning potential and a determination of whether imputing income to her is justified. Where "no hearing takes place, no evidence is admitted, and no findings of fact are made," we owe no deference to the trial court's conclusions. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009).

Next, we consider defendant's argument that the judge erred in ordering college contributions for G.O. without considering the Newburgh factors.[2]

_____

[2] The Newburgh factors for determining parents' college contributions include:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values[,] and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship

While the Family Part has "substantial discretion" in determining the parents' obligation to pay a child's college expenses, if the court fails to consider and apply the Newburgh factors, "we are compelled to reverse and remand for further proceedings." Gotlib, 399 N.J. Super. at 308-09. In Gotlib, the trial court failed to apply the Newburgh factors and instead ordered each parent to pay half the college expenses, although the parties had not agreed to that arrangement. We noted:

> The JOD is silent as to how the parties would divide higher education expenses; the provision merely stated that "[b]oth parties shall contribute to the college costs of the children in accordance with appropriate legal standards." In arriving at his decision, the motion judge did not address the Newburgh and statutory factors reflected in N.J.S.A. 2A:34-23(a). The court simply appears to have divided the expenses equally. This approach is not sustainable.
>
> [Id. at 310.]

---

> of the education requested to any prior training and to the overall long-range goals of the child.
>
> [Newburgh, 88 N.J. at 545.]

These factors were reflected in later legislation concerning the parents' child support obligations. N.J.S.A. 2A:34-23(a); see Kiken v. Kiken, 149 N.J. 441, 449-50 (1997).

A-4687-16T3

Likewise, here, despite acknowledging <u>Newburgh</u>'s requirement, the judge allocated college expenses for G.O. in proportion to their respective incomes as specified in the Guidelines, notwithstanding the fact that defendant disputed plaintiff's earnings. We recognize the judge's good intentions in that he made the determination in order to spare the parties the expense of litigating the issue later and to allow them to devote those averted litigation expenses to G.O.'s college fund. However, despite acknowledging his limited funds, it is apparent that defendant does not share the judge's concern. Accordingly, we are constrained to reverse and remand for the judge to address the parties' obligations to G.O.'s college expenses applying the <u>Newburgh</u> factors.

Finally, we consider defendant's contention that the judge failed to analyze the requisite factors in denying him counsel fees. An award of counsel fees in a matrimonial action is a discretionary determination, <u>Williams v. Williams</u>, 59 N.J. 229, 233 (1971), reached after consideration of "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23.

<u>Rule</u> 5:3-5(c) permits an award of fees upon consideration of the following nine factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to

A-4687-16T3

contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

See Mani v. Mani, 183 N.J. 70, 94-95 (2005) (explaining a court "must" consider these factors even though Rule 5:3-5(c) says a court "should" consider them). However, not every factor must be considered, Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013), and "[w]e will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Here, we discern no clear abuse of discretion. The judge found that both parties had reasonable positions, achieved some success, and had the ability to bear their respective legal costs. We are satisfied that the judge's decision had adequate support in the record, and we will not disturb that determination. In sum, we reverse and remand for the judge to reconsider defendant's child support obligation based on additional evidence on plaintiff's earning potential, and to

22

address the parties' obligations to G.O.'s college expenses, applying the <u>Newburgh</u> factors. We affirm in all other respects.

Affirmed in part; reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4687-16T3